UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| TIFFANY JENKINS, | ) |
| | ) |
|     *Plaintiff* | ) |
| | ) |
| v. | )    No. 1:14-cv-285-DBH |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|     *Defendant* | ) |

### REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the administrative law judge erroneously concluded that she could perform certain representative jobs despite her low IQ. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 12-15.[2] I find no reversible error. Accordingly, I recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 10, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] At oral argument, the plaintiff's counsel withdrew his client's remaining point of error, which challenged the administrative law judge's assessment of the nature and limiting effect of her fibromyalgia. *See* Statement of Errors at 4-12.

1

borderline intellectual functioning, post-traumatic stress disorder ("PTSD"), anxiety disorder NOS [not otherwise specified], personality disorder NOS, polysubstance abuse in remission, fibromyalgia, and somatic dysfunction, Finding 2, Record at 111-12; that she had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) but could only occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, kneel, crouch, and crawl; needed to avoid moderate exposure to vibrations as well as constant handling and fingering bilaterally; and was limited to simple, routine, repetitive, competitive tasks, assuming normal work breaks over an eight-hour day, with few, if any, changes in the workplace setting and no interaction with the general public, Finding 4, *id*. at 113; that, considering her age (26 years old, defined as a younger individual, on the date that her application was filed, May 22, 2009), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 121; and that she, therefore, had not been disabled from May 22, 2009, through the date of the decision, May 11, 2012, Finding 10, *id*. at 123.  The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

       The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff argues that the administrative law judge's Step 5 finding cannot stand because she impermissibly rejected the vocational expert's testimony that the plaintiff's severe intellectual limitations would preclude her from performing the jobs on which the administrative law judge relied – those of office cleaner, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 323.687-014, price marker, DOT § 209.587-034, and flower care worker, DOT § 405.687-010 – as well as two additional jobs offered in response to a hypothetical question containing even greater restrictions, laundry folder, DOT § 361.687-014, and packing line worker, DOT § 753.687-038. *See* Statement of Errors at 14-15; Record at 63-67, 118-19, 122.

The plaintiff relies on the following exchange at hearing between her counsel and the vocational expert:

> Q      Assume the . . . hypotheticals that the [administrative law judge] gave you, but that the claimant is in the bottom 10 percent of the population in accordance with her full scale IQ, so that her work at the bottom 10 percent would be precluded, would that eliminate any or all of these jobs?
>
> A      The bottom 10 percent, I would say at that level it would be a questionable capacity to work. Yes, I think it would . . . eliminate all work.

> Q      Okay, and . . . just to refine, is it your experience that people in the bottom 10 percent generally require what would be called accommodations to work successfully?
>
> A      Yes, and often it would be in a supported work environment, or accommodations would be provided in either work schedule or work tasks, but not working at a production pace.

*Id*. at 67.

She notes that, in a report dated April 27, 2007, agency examining consultant Donna M. Gates, Ph.D., assessed her with a full-scale IQ of 78 based on Wechsler Adult Intelligence Scale-III ("WAIS-III") testing. *See* Statement of Errors at 14; Record at 562. Per the plaintiff's counsel's research, this corresponds to an IQ in approximately the 7th percentile. *See* Statement of Errors at 14 & n.3.

Post-hearing, the plaintiff's counsel submitted a letter to the administrative law judge in which he asserted, based on a letter from psychologist Barbara J. McKim, Ph.D., that, under the new WAIS-IV test, the plaintiff's full-scale IQ would be 76, placing her at an even lower percentile (5.48 percent). *See* Record at 902. He added, "Notably[,] the five jobs cited by the VE [vocational expert] . . . all exclude the bottom 10% in General Learning Ability." *Id*.

The administrative law judge specifically addressed and rejected the argument that the plaintiff's IQ score precluded employment, stating:

> [Dr. Gates'] examination occurred nearly two years prior to the amended alleged onset date, so its usefulness for determining the [plaintiff's] functional limitations as of that date is limited. However, the [plaintiff] through her representative, argues that the fact that Dr. Gates assessed the [plaintiff's] intelligence as falling within the low average to borderline range of intellectual functioning, with IQ scores ranging from 72 to 87, precludes all competitive work. The [plaintiff's] IQ has not been formally tested since April 2007, but even assuming that [she] continues to operate in the borderline intellectual functioning range, this fact alon[e] does not preclude all competitive employment. The undersigned must assess the functional limitations that stem from the diagnosis of borderline intellectual functioning. Many of the functional limitations identified by Dr. Gates in her medical source statement focus on difficulty relating well to others,

> difficulty managing stress, and difficulty maintaining reliability, that flow from impairments in areas other than her overall cognitive functioning. Significantly, Dr. Gates, despite the [plaintiff's] low IQ scores, opined that [she] likely could complete simple job instructions, which is a finding consistent with the [RFC].
>
> The above evidence limits the persuasiveness of the [plaintiff's] argument that, simply by virtue of falling in the bottom 10% of general learning ability, the [plaintiff] would have a questionable capacity to work competitively, and would generally require accommodations to work successfully. The undersigned acknowledges that the vocational expert did testify that falling in the bottom 10% in this category would preclude all work activity, but this hypothetical was vague and beyond the expertise of the vocational expert, who is not a psychiatric specialist. Based on the evidence outlined above, including the psychiatric examinations performed during the alleged period of disability, and [the plaintiff's] good performance in group therapy at the end of 2011 and into 2012, the weight of the evidence does not support finding that [she] would require accommodations to perform simple, routine, and repetitive tasks, in an environment with few changes, isolated from the general public. Therefore, the undersigned does not find this argument persuasive, or a basis for including additional limitations within the [RFC], even taking into account the detailed explanation of IQ testing provided by Barbara J. McKim, Ph.D.

*Id.* at 118-19 (citation omitted).

The plaintiff cites several authorities, among them *Gurney v. Social Sec. Admin. Comm'r*, 880 F. Supp.2d 174 (D. Me. 2012), for the proposition that it was error for the administrative law judge to conclude that the question asked of the vocational expert was vague and sought a response beyond the scope of his expertise. *See* Statement of Errors at 14-15. She points out that all five jobs cited by the vocational expert exclude the bottom 10 percent in General Learning Ability. *See id.* at 15; *see also* DOT §§ 209.587-034, 323.687-014, 361.687-014, 405.687-010, 753.687-038. She argues that the vocational expert's testimony, therefore, was both directly relevant and within the purview of his expertise.

However, as the commissioner argues, *see* Opposition at 12, *Gurney* is distinguishable. In *Gurney*, the claimant's attorney brought to the vocational expert's attention that, according to the DOT, all four jobs at issue required a Level 4 General Learning Ability, defined as the

"Lowest 1/3 *Excluding Bottom 10%.*" *Gurney*, 880 F. Supp.2d at 177 (emphasis in original). The vocational expert expressed surprise and indicated that, in his experience, there were jobs available for people in the bottom 10 percent, even though it was reasonable to assume that individuals in the 6th or 7th percentile of the population would have difficulty. *See id*. However, he testified that, given the limitations of his software program, he was unable to provide representative jobs for such individuals. *See id*. at 177-78.

This court held that remand was warranted on the basis that, in contravention of Social Security Ruling 00-4p ("SSR 00-4p"), the administrative law judge had failed to address what the vocational expert's testimony indicated was a discrepancy between the DOT's description of the aptitudes required to perform the jobs at issue and the plaintiff's IQ scores. *See id*. at 176-78.

> SSR 00-4p provides, in relevant part:
>
> The Responsibility To Ask About Conflicts
>
> When a VE [vocational expert] or VS [vocational specialist] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> • Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> • If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> Explaining the Resolution
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 246.

The *Gurney* court held that the administrative law judge's error was not harmless because the vocational expert conceded that, as a result of software difficulties, he could not name any jobs for individuals in the bottom 10 percent. *See id.* at 178. It rejected the commissioner's argument that the administrative law judge properly deemed the vocational expert's testimony outside the scope of his expertise insofar as he translated raw IQ scores into an RFC opinion. *See id*. First, it observed that the administrative law judge had never actually addressed the vocational expert's testimony, pointing out that any affirmance of the decision on a basis not articulated by the agency would run afoul of *SEC v. Chenery Corp*., 332 U.S. 194 (1947). *See id*. Second, it observed that it was "hardly clear" that the vocational expert had exceeded the bounds of his expertise when he "testified, in effect, that in his experience, people with aptitude/IQ scores such as those of the plaintiff had difficulty performing the jobs at issue." *Id*. The court noted that, in its view, this was "no different than testifying that a person limited to simple tasks can or cannot perform certain jobs." *Id*. It concluded:

> Regardless of whether Dr. Claiborn [a mental health expert who testified at the claimant's hearing] and the administrative law judge meant to subsume the [claimant's] IQ scores in their RFC findings, the DOT indicated that a person with such scores, which the administrative law judge evidently accepted as valid, could not perform the jobs at issue. The plaintiff's counsel called this discrepancy to both [the vocational expert's] and the administrative law judge's attention, and it required resolution.

*Id*. at 178-79 (citations omitted).

In this case, by contrast, the administrative law judge resolved the conflict, explaining why she declined to accept the testimony at issue. *See* Record at 118-19. SSR 00-4p requires nothing more.

7

To the extent that the plaintiff separately argues that the administrative law judge's resolution is unsupported by substantial evidence, she likewise falls short of demonstrating reversible error. Even assuming *arguendo* that the administrative law judge erred in indicating that the vocational expert lacked expertise to offer the testimony at issue, she offered an additional rationale that plainly serves as substantial evidence in support her rejection of his testimony: that the plaintiff's purported inability to perform the simple jobs at issue was inconsistent with the weight of the evidence. *See id.*[3]

As the commissioner observes, *see* Opposition at 14-15, the administrative law judge noted that Dr. Gates herself had deemed the plaintiff capable of performing simple work despite her IQ score, that no findings on psychiatric examinations conducted during the plaintiff's alleged period of disability appeared to indicate that she could not perform simple, routine, and repetitive tasks, as long as she did not work with the public and had to deal with few changes in the workplace setting, and that the plaintiff had performed well in group therapy at the end of 2011 and into 2012, *see* Record at 118-19 (incorporating by reference earlier discussion, *id*. at 117). Moreover, as the commissioner points out, *see* Opposition at 15, the administrative law judge gave substantial weight to the opinions of two agency nonexamining consultants, Brian Stahl, Ph.D., and Lewis Lester, Ph.D., who, with the benefit of review of the Gates report, including the plaintiff's IQ scores, deemed the plaintiff capable of understanding and remember simple instructions and tasks, *see* Record at 121, 412, 416, 519.[4]

---

[3] The commissioner invites the court to reconsider the assumption made in *Gurney* that IQ scores equate to the General Learning Ability levels set forth in the DOT, in light of a growing body of decisions addressing the significance of IQ scores at Step 5. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 12-14. Regardless of whether this assumption is correct, I find no reversible error here and so no need to revisit the issue.

[4] None of the additional authorities cited by the plaintiff persuades me otherwise. *See* Statement of Errors at 15. The plaintiff cites *Burns v. Barnhart*, 312 F.3d 113 (3d Cir. 2002), for the proposition that a vocational expert is competent to testify as to whether claimants with certain aptitude levels can perform various jobs, noting that the (*continued on next page*)

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

*Burns* court observed that the claimant was "free on remand to examine the vocational expert based on the aptitude level required for a job as detailed in other occupational handbooks." *Burns*, 312 F.3d at 128 & n.9. However, as discussed above, the court need not address this point to resolve this appeal. The courts in *Frazee v. Barnhart*, 259 F. Supp.2d 1182 (D. Kan. 2003), and *Treinen v. Massanari*, No. C00-4053-DEO, 2001 WL 34008721 (N.D. Iowa Nov. 13, 2001), held that administrative law judges failed to address adequately, or at all, what the courts deemed an apparent facial conflict between claimants' low IQ scores and the DOT General Learning Ability level required to perform the jobs at issue. *See Frazee*, 259 F. Supp.2d at 1198-99; *Treinen*, 2001 WL 34008721, at *12-*14. Yet, as the commissioner points out, *see* Opposition at 15, in *Bowie v. Colvin,* No. 2:12-cv-205-DBH, 2013 WL 1912913, at *10 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013), this court perceived no such apparent facial conflict. In any event, in this case, unlike in *Frazee* and *Treinen*, the administrative law judge addressed and supportably resolved the issue raised by the vocational expert's testimony. The plaintiff also directs the court's attention to "references to aptitudes" in Social Security Rulings 82-41, 86-8, and 88-3c and in 20 C.F.R. § 416.921. *See* Statement of Errors at 15. However, she neglects to explain how those authorities bear on this issue. "It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived." *Graham v. United States,* 753 F. Supp. 994, 1000 (D. Me. 1990) (citation and internal quotation marks omitted).