UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TIFFANY JENKINS, | ) |
|               PLAINTIFF | ) ) ) |
| v. | ) ) )   CIVIL NO. 1:14-CV-285-DBH |
| CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
|               DEFENDANT | ) ) |

## ORDER VACATING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR REHEARING

The issue in this Supplemental Security Income Disability appeal is whether the Administrative Law Judge properly discounted a vocational expert's testimony that if the claimant had the residual functional capacity the Administrative Law Judge described, but also fell within the bottom ten percent of the population in terms of her full scale IQ, gainful employment was not available to her. I heard oral argument on August 18, 2015. I disagree with the United States Magistrate Judge's Recommended Decision,[1] and conclude that the Commissioner's decision denying benefits was not supported by substantial evidence. Therefore, under 42 U.S.C. § 405(g), I **VACATE** and **REMAND** the matter for rehearing.[2]

---

[1] Report and Recommended Decision of June 28, 2015 (ECF No. 19).
[2] The Commissioner's Objection to Plaintiff's Post-Argument Submission (ECF No. 25) is moot because I did not use the submitted article in making this decision.

**BACKGROUND AND STANDARD OF REVIEW**

The relevant facts are summarized in the Recommended Decision (I include additional facts below, as necessary). I review the Commissioner's decision[3] to determine whether it was supported by substantial evidence. Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citing 42 U.S.C. § 405(g)).

**ANALYSIS**

The dispute in this matter involves Step 5 of the Social Security Administration's ("SSA") five-step process for evaluating whether a person is disabled. See 20 C.F.R. § 416.920(a). The Commissioner of Social Security "has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform." Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).[4] The Commissioner can make this showing in two ways: by applying the medical-vocational guidelines (also known as the "Grid"), 20 C.F.R. pt. 404, subpt. P, app. 2, or by relying on the testimony of a vocational expert. Dionne v. Heckler, 585 F. Supp. 1055, 1059 (D. Me. 1984).

Here, the ALJ properly determined that she needed the testimony of a vocational expert because the claimant had nonexertional impairments.[5] See

---

[3] Because the Appeals Council declined to review the decision of the Administrative Law Judge ("ALJ"), Administrative Record ("Record") at 27-32 (ECF No. 9), the ALJ's decision is the final determination of the Commissioner and the subject of my review. 20 C.F.R. § 416.1481; Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).
[4] The Commissioner can meet this burden by showing either that significant numbers of jobs the claimant can perform exist in the region where the claimant lives, or that they exist in "several other regions of the country." 20 C.F.R. § 416.966(a).
[5] A nonexertional impairment is "[a]ny impairment [that] does not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments [that] affect the mind, vision,

2

Record at 149; see also Heggarty v. Sullivan, 947 F.2d 990, 996 (1st Cir. 1991) ("If the occupational base is significantly limited by a nonexertional impairment, the [Commissioner] may not rely on the Grid to carry the burden of proving that there are other jobs a claimant can do."); see also Dionne, 585 F. Supp. at 1059 (given that claimant's impairment was nonexertional, the ALJ "properly enlisted the services of a vocational expert to determine whether a job existed in the national economy [that] Plaintiff, given her age, education, work history and mental impairment could perform.").

An ALJ calls a vocational expert to establish whether a person with the claimant's mental and physical impairments (as the ALJ has found them) nevertheless has work skills that "can be used in other work [*i.e.*, work not previously done by the claimant] and the specific occupations in which they can be used." See 20 C.F.R. § 416.966(e). To do so, the ALJ poses hypothetical residual functional capacities (roughly, the ability to perform work-related activities) to the vocational expert[6] and asks whether jobs are available for a person with these abilities. See Social Security Administration, Office of Disability Adjudication and Review, Vocational Expert Handbook 35-36 (June 2011) (explaining that a vocational expert does not give an opinion on whether the hypotheticals accurately present the claimant's abilities, but does testify as to whether a person with the abilities described in the hypotheticals can work in

---

hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6.

[6] The residual functional capacities are hypothetical because the ALJ at that point has not yet decided the claimant's actual residual functional capacity.

the national economy).

In her questions to the vocational expert here, the ALJ presented alternative hypothetical residual functional capacities for this claimant, and the vocational expert testified that, for some of the hypotheticals (one of which fit the ALJ's ultimate factual finding), the claimant could perform three jobs in the national economy.[7] Then, the following exchange occurred on cross-examination by the claimant's lawyer:

> **Q:** Assume the, the hypotheticals that the Judge gave you, but that the claimant is in the bottom 10 percent of the population in accordance with her full scale IQ, so that her work at the bottom 10 percent would be precluded, would that eliminate any or all of these jobs?
>
> **A**: The bottom 10 percent, I would say at that level it would be a questionable capacity to work. Yes, I think it would eliminate, it would eliminate all work.
>
> **Q:** Okay, and, and just to refine, is it your experience that people in the bottom 10 percent generally require what would be called accommodations to work successfully?
>
> **A:** Yes, and often it would be in a supported work environment, or accommodations would be provided in either work schedule or work tasks, but not working at a production pace.

Record at 93. The ALJ did not ask the vocational expert any additional questions after the claimant's lawyer finished cross-examination.

---

[7] The vocational expert testified that the claimant could perform three jobs listed in the Dictionary of Occupational Titles ("DOT"): Office Cleaner (DOT 323.687-014, listed as "Cleaner, Housekeeping"); Price Marker (DOT 209.587-034); and Flower Care Worker (DOT 405.687-010, listed as "Flower Picker"). Record at 89-90. The SSA takes administrative notice of the DOT (which was originally published by the United States Department of Labor) as a source of occupational information at Step 5 of the disability evaluation process. 20 C.F.R. § 416.966(d); see also SSR 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT ... for information about the requirements of work in the national economy.").

In the decision denying disability benefits, the ALJ "acknowledge[d] that the vocational expert did testify that falling in the bottom 10% in this category [identified earlier by the ALJ as "general learning ability"[8]] would preclude all work activity." Record at 146. But the ALJ rejected this part of the vocational expert's testimony because "this hypothetical was vague and beyond the expertise of the vocational expert, who is not a psychiatric specialist." Id.

The ALJ's reasoning does not support rejecting this part of the vocational expert's testimony. First, the testimony was clearly within the scope of a vocational expert's expertise: the vocational expert gave an opinion about

---

[8] "General learning ability" is the "ability to 'catch on' or understand instructions and underlying principles; the ability to reason and make judgments. Closely related to doing well in school." U.S. Dep't of Labor, The Revised Handbook for Analyzing Jobs 9–3 (1991). General learning ability—along with ten other job-related "aptitudes"—was not included in the final published edition of the DOT. See U.S. Dep't of Labor, Dictionary of Occupational Titles 180 (Price Marker), 248 (Cleaner, Housekeeping), 289 (Flower Picker) (4th ed., Revised 1991). However, the aptitudes have been included as part of the DOT entries in online sources, see, e.g., DICOT 405.687-010, 1991 WL 673329 (Flower Picker), and courts generally have treated general learning ability as a component of the DOT job titles. See, e.g., Browning v. Colvin, 766 F.3d 702, 709-12 (7th Cir. 2014); Griffith v. Comm'r of Soc. Sec., 582 Fed. App'x 555, 565 fn. 6 (6th Cir. 2014); Bowie v. Colvin, No. 2:12-cv-205-DBH, 2013 WL 1912913, at *10 (D. Me. Mar. 31, 2013); Gurney v. Soc. Sec. Admin. Comm'r, 880 F. Supp. 2d 174, 177 (D. Me. 2012). All three jobs that the vocational expert identified from the DOT in this case are associated with a general learning ability level of 4, meaning that they are appropriate for the lowest 1/3 of the population in terms of general leaning ability, *excluding the bottom 10%.* See DICOT 209.587-034, 1991 WL 671802 (Price Marker); DICOT 323.687-014, 1991 WL 672783 (Cleaner, Housekeeping); DICOT 405.687-010, 1991 WL 673329 (Flower Picker).

    I find it unnecessary to determine the exact origin of the general learning ability and aptitude requirements because neither the Commissioner nor the plaintiff challenges the vocational expert's ability to testify about aptitude levels related to the jobs he identified. In fact, the Commissioner, in argument, has treated general learning ability as *part of* the DOT job titles. See Def.'s Opp'n to Pl.'s Itemized Statement of Errors at 11 fn. 3 (ECF. No. 15); Def.'s Resp. to Pl.'s Objs. to the Magistrate Judge's R. & R. at 2 fn. 1 (ECF No. 21). Even if the aptitudes are "not in the DOT," Burns v. Barnhart, 312 F.3d 113, 128 (3d Cir. 2002), there is no obvious reason why an ALJ cannot consider them. For example, the SSA regulations generally provide that basic work activities include "the abilities *and aptitudes* necessary to do most jobs," 20 C.F.R. § 416.921(b) (emphasis added), and the ALJ may take administrative notice of reliable job information outside of information in the DOT. See 20 C.F.R. § 416.966(d) (outlining non-exclusive list of sources). In Burns, the Third Circuit ultimately determined that on remand the claimant could examine the vocational expert about the aptitude levels required for specific jobs. Burns, 312 F.3d at 128 fn. 9.

5

whether there were available jobs in the national economy for a person with specified characteristics, not about whether the claimant actually exhibited any particular characteristic.  This was not psychiatric testimony.

Second, the hypothetical presented by the claimant's counsel was clumsy, but it was not vague, and the vocational expert's answer demonstrates that he understood the question. If the ALJ had a problem with the lawyer's use of "full scale IQ" as equivalent to general learning ability[9] or as part of the claimant's residual functional capacity, then the ALJ should have asked a clarifying question to ascertain whether the vocational expert really believed that the claimant's IQ altered the expert's earlier answers that the claimant could do certain jobs. Instead, while accepting that the claimant's IQ and general learning ability were both in the bottom 10%,[10] the ALJ simply disregarded the vocational expert's testimony on cross-examination about the effect of this characteristic on whether a significant number of jobs were available.  The ALJ reasoned that her own residual functional capacity findings, as stated initially in her questions to the vocational expert, trumped the expert's later answers on cross-

---

[9] The case law demonstrates that there is disagreement over whether and to what degree general learning ability and IQ are interchangeable. See, e.g., Griffith, 582 Fed. App'x at 565 fn. 7 (citing cases stating that IQ does not correlate to general learning ability); Camden v. Colvin, Civil No. SKG-13-1553, 2014 WL 2964992, at *5 (same). But see Gurney, 880 F. Supp. 2d at 178-79 (equating IQ with general learning ability).

[10] With respect to IQ, the ALJ observed both that "[t]he claimant's IQ has not been formally tested since April 2007," Record at 145, and that "it is unlikely that the claimant's IQ scores have changed significantly." Id. at 147. With respect to general learning ability, the ALJ was not persuaded that "simply by virtue of falling in the bottom 10% of general learning ability, the claimant would have a questionable capacity to work competitively, and would generally require accommodations to work successfully." Id. at 146. However, the ALJ also stated: "The undersigned acknowledges that the claimant does have borderline intellectual functioning, in addition to her other mental impairments, and her IQ scores indicate performance well below average levels of intelligence." Id. at 146-47.

examination about the effects of IQ or general learning ability on job availability. Record at 146. For that conclusion the ALJ needed the expert's testimony, and she did not pose the necessary question to obtain it.

This was not a case of the ALJ attempting to resolve a contradiction in the vocational expert's testimony under SSR 00-4p. The vocational expert's testimony did not conflict with the DOT or with SSA policy. See SSR 00-4p, 2000 WL 1898704, at *3-4. Indeed, even as she dismissed the vocational expert's testimony on cross-examination, the ALJ stated that "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Record at 149.[11] Nor was the testimony inherently self-contradictory: the vocational expert testified that a person with the limitations in the ALJ's hypotheticals could perform three jobs, but that a person who had those same limitations and was also within the bottom 10% of intellectual functioning could not.

I conclude that the ALJ erred in failing to obtain clarification from the vocational expert about the availability of jobs for this claimant, and that the ALJ's decision that the claimant is not disabled—in the face of the vocational

---

[11] For this reason, Gurney cannot be distinguished on the basis that the ALJ failed to resolve a conflict under SSR 00-4p there, but did so here. In Gurney, this court found that a vocational expert did not exceed the bounds of his expertise when he testified that "people with aptitude/IQ scores such as those of the plaintiff had difficulty performing the jobs at issue." 880 F. Supp. 2d at 178. This aspect of Gurney supports the conclusion that the ALJ here improperly dismissed the vocational expert's testimony. In contrast, Bowie v. Colvin is distinguishable because there the ALJ elicited testimony from the vocational expert that the claimant *could* perform jobs in the national economy with her particular limitations. 2013 WL 1912913, at *10.

7

expert's testimony on cross-examination that no jobs would be available to someone with her characteristics—is therefore not supported by substantial evidence.  A remand for a new hearing at Step 5 is appropriate to determine whether the claimant is able to perform any jobs.  See Seavey v. Barnhart, 276 F.3d 1, 10-11 (1st Cir. 2001) (finding remand to be appropriate remedy where ALJ "ignored relevant and material evidence" or erroneously weighed conflicting evidence.).

## CONCLUSION

For these reasons, I **VACATE** the Commissioner's decision and **REMAND** the matter for rehearing.

SO ORDERED.

DATED THIS 28TH DAY OF AUGUST, 2015

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE (BANGOR)**
**CIVIL DOCKET NO. 1:14-CV-285-DBH**

| | | |
|---|---|---|
| **Tiffany Jenkins,**<br><br>  **Plaintiff** | Represented By | **Francis Jackson**<br>Jackson & MacNichol<br>238 Western Avenue<br>South Portland, ME 04106<br>207-772-9000<br>Email: mail@jackson-macnichol.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Marc D. Pepin, Jr.**<br>Jackson & MacNichol<br>238 Western Avenue<br>South Portland, ME 04106<br>207-772-9000<br>Email: mail@jackson-macnichol.com<br>*ATTORNEY TO BE NOTICED* |
| **v.** | | |
| **Carolyn W. Colvin, Acting Commissioner, Social Security Administration,**<br><br>  **Defendant** | Represented By | **Jason W. Valencia**<br>Office of General Counsel, Region I<br>Social Security Administration<br>JFK Federal Building, Room 625<br>Boston, MA 02203-0002<br>(617) 565-2375<br>email: jason.valencia@ssa.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Natasha Oeltjen**<br>Office of General Counsel, Region I<br>Social Security Administration<br>JFK Federal Building, Room 625<br>Boston, MA 02203-0002<br>(617) 565-1849<br>email: natasha.oeltjen@ssa.gov<br>*ATTORNEY TO BE NOTICED* |